## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

DOMINGO MENDOZA MENDEZ,

               Petitioner,

v.

RYAN SHEA, *in his official capacity as the Freeborn County Sheriff*; PETER BERG, *in his official capacity as the St. Paul Field Office Director for Immigration and Customs Enforcement*; TODD LYONS, *in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement*; and KRISTI NOEM, *in her official capacity as Secretary of Homeland Security*,

               Respondents.

Case No. 25-cv-2830 (LMP/ECW)

**ORDER DISMISSING HABEAS PETITION**

---

Magdalena B. Metelska, **Metelska Law, P.L.L.C., Hopkins, MN**, for Petitioner Domingo Mendoza Mendez.

Lucas B. Draisey and Ana H. Voss, **United States Attorney's Office, Minneapolis, MN**, for Respondents Peter Berg, Todd Lyons, and Kristi Noem.

Petitioner Domingo Mendoza Mendez ("Mendoza Mendez") filed a petition for a writ of habeas corpus on July 11, 2025, seeking his immediate release from detention pending his imminent removal from the United States pursuant to a valid 2021 final order of removal. ECF No. 1. Respondents Peter Berg, Todd Lyons, and Kristi Noem (collectively, the "Government") primarily argue that the Court lacks jurisdiction to hear

Mendoza Mendez's claims.[1]  *See* ECF No. 12 at 10–15.  For the reasons discussed below, the Court finds that it lacks jurisdiction to entertain Mendoza Mendez's petition.

## BACKGROUND

Mendoza Mendez's pending application for U-1 nonimmigrant status—that is, for a "U visa"—is key to his argument in support of the relief requested in his petition.  *See* ECF No. 1 ¶¶ 22–39.  Therefore, the Court begins with a brief overview of the U-visa application process and the relevant statutory and regulatory provisions before turning to the factual and procedural background underlying Mendoza Mendez's claims.

## I.     Statutory and Regulatory Framework of the U Visa

In 2000, Congress passed the Victims of Trafficking and Violence Protection Act ("VTVPA").  VTPVA, Pub. L. No. 106-386, 114 Stat. 1464 (2000) (codified at 22 U.S.C. §§ 7101 *et seq.*).  The purpose of the VTVPA, generally, was to "combat trafficking in persons, especially into the sex trade, slavery, and involuntary servitude, [and] to reauthorize certain Federal programs to prevent violence against women."  *Id.*  To that end, the VTVPA contained the Violence Against Women Act of 2000, which included the Battered Immigrant Women Protection Act ("BIWPA").  *See id.* at 1491, 1518–37.  Congress created the U nonimmigrant classification as part of the BIWPA.  *Id.* at 1533–37 (codified in part at 8 U.S.C. §§ 1101(a)(15)(U), 1184(p)).

---

[1]     Respondent Ryan Shea has not responded to Mendoza Mendez's petition or otherwise participated in these proceedings.

In 2006, Congress enacted the Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, 119 Stat. 2960 (2006), which directed the Department of Homeland Security ("DHS") to promulgate regulations to implement the provisions of the BIWPA, *id.* at 3066.  DHS published an interim rule the next year explaining that the purpose of the U nonimmigrant classification is "to strengthen the ability of law enforcement agencies to investigate and prosecute such crimes as domestic violence, sexual assault, and trafficking in persons, while offering protection to [noncitizen][2] crime victims in keeping with the humanitarian interests of the United States."  New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53014, 53014 (Sept. 17, 2007) (codified at 8 C.F.R. § 214.14) [hereinafter U-Visa Interim Rule].

A noncitizen is eligible for "U-1" nonimmigrant status upon showing he: (1) has suffered substantial physical or mental abuse as a result of having been a victim of certain criminal activity that was in violation of the laws of the United States or occurred within the United States; (2) possesses information about the criminal activity and has been or is likely to be helpful to law enforcement in investigating or prosecuting the criminal activity; and (3) is admissible to the United States or has had all grounds of inadmissibility waived. *See* 8 U.S.C. §§ 1101(a)(15)(U), 1182(a); 8 C.F.R. §§ 214.1(a)(3)(i), 214.14(b).  To obtain U-1 nonimmigrant status, a noncitizen must file a petition with United States Citizenship

---

[2]    This Order uses the term "noncitizen" as equivalent to the statutory term "alien." *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020).

and Immigration Services ("USCIS") certifying that these requirements are satisfied. *See* 8 U.S.C. § 1184(p). The U-Visa Interim Rule, which has not been amended since its publication in 2007, provides that "[j]urisdiction over all petitions for U nonimmigrant status rests with USCIS." U-Visa Interim Rule at 53021; *see* 8 C.F.R. § 214.14(c)(1) ("USCIS has sole jurisdiction over all petitions for U nonimmigrant status."). A noncitizen who is subject to a final order of removal issued by an Immigration Judge ("IJ") or the Board of Immigration Appeals ("BIA") is "not precluded from filing a petition for U-1 nonimmigrant status." 8 C.F.R. § 214.14(c)(1)(ii). But "[t]he filing of a petition for U-1 nonimmigrant status has no effect on" the authority of United States Immigration and Customs Enforcement ("ICE") to execute a U-1 petitioner's final order of removal. *Id.*

If a U-visa petition is granted, the petitioner receives lawful U-1 nonimmigrant status and employment authorization for up to four years. *See* 8 U.S.C. § 1184(p)(6); 8 C.F.R. §§ 214.14(c)(7), (g)(1). The number of U visas that may be issued each year is statutorily capped at 10,000, 8 U.S.C. § 1184(p)(2)(A), and USCIS adjudicates petitions on a first-come, first-served basis. U-Visa Interim Rule at 53033–34; *see* 8 C.F.R. § 214.14(d)(2). Once the cap has been reached, "eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list" until USCIS can conduct a final adjudication on their petitions. 8 C.F.R. § 214.14(d)(2).

Because final adjudications on U-visa petitions "can take six to eight years due to [the] high volume of applications," ECF No. 13 ¶ 21, in 2021, USCIS implemented a "bona fide determination" ("BFD") policy as an "alternative waiting list process," ECF No. 12 at 6. *See* U.S. Citizenship & Immig. Servs., Policy Manual, Vol. 3, Part C, Ch. 5,

4

https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 (last visited July 27, 2025) [https://perma.cc/NA7Z-Y7TH] [hereinafter U-Visa BFD Policy].  Under the U-Visa BFD Policy, USCIS first determines whether a U-1 petitioner has submitted a "bona fide" petition, meaning that the petitioner has complied with initial evidence requirements and successfully completed a background check.  *Id.*  If so, USCIS may exercise its discretion to grant the petitioner employment authorization and deferred action.[3]  *Id.*  A petitioner "may be removed from the waiting list, and the deferred action or parole may be terminated at the discretion of USCIS."  8 C.F.R. § 214.14(d)(3).  Once a U visa becomes available, the petition is subject to final adjudication and, if approved, the petitioner receives lawful U-1 nonimmigrant status.  *Id.*

## II.    Factual and Procedural Background

Mendoza Mendez, who is a Mexican national, first entered the United States without inspection on January 18, 2000.  *See* ECF No. 1 ¶ 40; ECF No. 5-2 at 4.  He was encountered by United States Border Patrol and granted voluntary return to Mexico the same day.  *See* ECF No. 1 ¶ 40; ECF No. 5-2 at 4; ECF No. 13 ¶ 4.  According to Mendoza Mendez, he re-entered the United States without inspection on January 20, 2000—two days later—and has remained in the United States ever since.  ECF No. 1 ¶ 40; ECF No. 5-2 at 4.

---

[3]    Deferred action is "an exercise of prosecutorial discretion that defers the removal of the [noncitizen] based on the [noncitizen's] case being made a lower priority for removal" but "does not confer any immigration status upon a[] [noncitizen]."  U-Visa Interim Rule at 53015 n.3.

Between 2003 and 2010, Mendoza Mendez accrued various driving and traffic violations, including a conviction for driving while impaired in April 2005 and multiple convictions for driving without a valid license between February 2006 and July 2010. ECF No. 13-1 at 6–7; *see* ECF No. 1 ¶ 40. In August 2018, Mendoza Mendez was arrested and charged in Minnesota for driving while impaired a second time. ECF No. 1 ¶ 40; ECF No. 13-1 at 7. Following his arrest, Mendoza Mendez was transferred to ICE's custody and placed in removal proceedings. ECF No. 1 ¶ 41; ECF No. 13-1 at 1–3.

In November 2018, an IJ granted Mendoza Mendez cancellation of removal, ECF No. 1 ¶ 42, and DHS appealed the IJ's decision to the BIA, ECF No. 13 ¶¶ 10, 13. On June 17, 2021, the BIA overturned the IJ's decision and vacated the order cancelling Mendoza Mendez's removal. ECF No. 1-7 at 1–4. The BIA granted Mendoza Mendez voluntary departure in lieu of a final order of removal and ordered that he leave the United States within sixty days—that is, by August 16, 2021. ECF No. 1-7 at 4. The BIA noted that Mendoza Mendez "shall be removed" from the United States if he failed to voluntarily depart in accordance with the BIA's decision. *Id.*

Mendoza Mendez chose not to voluntarily depart the United States. He also chose not to appeal the BIA's decision. Instead, on July 15, 2021, he applied for U nonimmigrant status with USCIS, citing as the basis a June 2013 assault in which he was the victim. ECF No. 1 ¶ 43; *see* ECF No. 5-2 at 4. About one month later, on August 18, 2021, Mendoza Mendez filed a motion with the BIA to reopen his removal proceedings based on his pending U-visa application. ECF No. 1 ¶ 44; *see generally* ECF No. 13-4. The BIA denied Mendoza Mendez's motion on June 28, 2023, explaining that he had not been diligent in

6

seeking a U visa because the assault had occurred eight years before he filed his U-visa application, and he "ha[d] not adequately explained" the delay.  ECF No. 1-6 at 2.  Mendoza Mendez did not appeal the BIA's denial of his motion to the Eighth Circuit.  In late November 2024, Mendoza Mendez submitted a request to ICE to stay his removal, which ICE denied shortly thereafter.  ECF No. 1 ¶ 45.

On December 20, 2024, USCIS issued a BFD notice regarding Mendoza Mendez's pending U-visa application.  ECF No. 1-3 at 1.  The BFD notice states that "the evidence demonstrates [Mendoza Mendez's application] for U nonimmigrant status is bona fide, and [he] warrant[s] a favorable exercise of discretion to receive employment authorization and deferred action."  *Id.*  The notice explains that "[d]eferred action is an act of administrative convenience to the government which gives some cases lower priority for removal" and that Mendoza Mendez's "period of deferred action will begin on the date [his] employment authorization begins."  *Id.*

In January 2025, Mendoza Mendez provided a copy of the BFD notice to ICE and asked for reconsideration of his request for a stay of removal, but as of the date of this Order, he has not received a response.  ECF No. 1 ¶ 48.  Mendoza Mendez applied with USCIS to obtain employment authorization on June 6, 2025, and that application remains pending.  *See* ECF No. 1 ¶ 47.

On July 9, 2025, Mendoza Mendez was instructed to appear at ICE's St. Paul Field Office to be fitted with an electronic ankle monitor.  *See* ECF No. 1 ¶ 49.  When he appeared the next day as instructed, ICE officers arrested him.  *Id.*  Mendoza Mendez advised the ICE officers that he had received a favorable BFD notice, but the officers told

him that they used to "respect it but no longer do so" and that "it is useless." *Id.* ¶ 50. Mendoza Mendez has been detained at the Freeborn County Jail in Albert Lea, Minnesota, since July 10, 2025, for the purpose of executing his final order of removal. *Id.* ¶ 51; ECF No. 13 ¶ 23.

Mendoza Mendez filed his habeas petition on July 11, 2025. ECF No. 1. He requests, in pertinent part, that the Court: (1) declare that his detention "violates the Due Process Clause of the Fifth Amendment" and that the Government's "failure to recognize and give full weight to a lawfully issued BFD grant by USCIS" violates the Administrative Procedures Act and the Immigration and Naturalization Act; and (2) issue a writ of habeas corpus ordering the Government to "release [him] immediately." *Id.* at 17. He subsequently filed a motion for a temporary restraining order ("TRO") and a preliminary injunction ordering his immediate release from detention and staying his removal until a determination could be made as to the merits of his petition. ECF No. 2.

The Court entered a TRO on July 15, 2025, requiring that Mendoza Mendez not be removed from the United States until the parties could brief the issues in this case and the Court could consider the parties' arguments. ECF No. 10. The Court set an expedited briefing schedule, *see* ECF No. 8, and held a hearing on July 29, 2025. Following the hearing, the Court extended the TRO until the earlier of fourteen days after July 29, 2025, or entry of this Order. ECF No. 23.

## ANALYSIS

Mendoza Mendez alleges that his rights to due process under the Fifth Amendment have been violated and that the Government's conduct is in violation of the statutes and

8

regulations governing U nonimmigrant status, 8 U.S.C. § 1101(a)(15)(U).  ECF No. 1 ¶¶ 55–70.  The Government argues that the Court lacks subject-matter jurisdiction to hear Mendoza Mendez's claims and that even if the Court had jurisdiction, Mendoza Mendez's claims fail on the merits.  ECF No. 12 at 10–19.

Because "jurisdiction is a threshold question [that] must be answered before all other questions," the Court first must determine whether it has jurisdiction to entertain Mendoza Mendez's petition before it may address the merits of his claims.  *Ginters v. Frazier*, 614 F.3d 822, 826 (8th Cir. 2010); *see Thigulla v. Jaddou*, 94 F.4th 770, 773 (8th Cir. 2024) (citation omitted) ("[A] federal court always has jurisdiction to determine its own jurisdiction." (alteration in original)).  For the reasons below, the Court finds that it lacks jurisdiction to hear Mendoza Mendez's claims or to grant the relief he seeks, denies his motion for a preliminary injunction, and dismisses this matter.

## I.    Subject-Matter Jurisdiction and Limitations of 8 U.S.C. § 1252(g)

Subject-matter jurisdiction refers to a court's "statutory or constitutional power to adjudicate [a] case."  *Thigulla*, 94 F.4th at 773 (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)).  If a court determines that it lacks subject-matter jurisdiction to hear a petitioner's claims, the court may not reach the merits of those claims and must dismiss the case.  *See id.* at 777–78 (collecting cases); *see also Brownback v. King*, 592 U.S. 209, 218, 218 n.8 (2021) (internal quotation marks omitted) (citation omitted) ("[A] court cannot issue a ruling on the merits when it has no jurisdiction because to do so is, by very definition, for a court to act [beyond its authority].").

9

Federal courts "are courts of limited jurisdiction." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025) (citation omitted). Their subject-matter jurisdiction is "[l]imited first by the Constitution, to only the kinds of 'Cases' and 'Controversies' listed in Article III." *Id.* In addition, it is well established that Congress may, by statute, limit the jurisdiction of the lower federal courts to hear certain types of cases. *Id.*; *see also Chase Manhattan Bank (Nat'l Ass'n) v. S. Acres Dev. Co.*, 434 U.S. 236, 240 (1978) ("Where . . . Congress has clearly established appropriate limitations on the District Courts' original jurisdiction, we are compelled to respect those limits.").

Congress has exercised its authority to limit the ability of federal district courts to entertain challenges to the commencement and adjudication of immigration proceedings and the execution of any resulting final orders of removal: "[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General[4] to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter." 8 U.S.C. § 1252(g). This limitation applies "notwithstanding any other provision of law," whether statutory or non-statutory, including the various "habeas corpus provision[s]" of federal law. *Id.*

Addressing the scope of section 1252(g), the Supreme Court has held that the statute "applies only to three discrete actions" that the Secretary of Homeland Security may take:

---

[4] The Eighth Circuit has explained that because of "legislation transferring functions of the former Immigration and Naturalization Service to the Department of Homeland Security . . . the statutory reference to 'Attorney General' now means the Secretary of the Department of Homeland Security." *Silva v. United States*, 866 F.3d 938, 940 n.2 (8th Cir. 2017) (citations omitted).

10

"her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (quoting 8 U.S.C. § 1252(g)) [hereinafter *AADC*].  But the Supreme Court noted, "It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.*  The Supreme Court also observed that section 1252(g) "seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *Id.* at 485.

In *Silva v. United States*, 866 F.3d 938 (8th Cir. 2017), the Eighth Circuit examined the scope of both section 1252(g) and the Supreme Court's holding in *AADC*.  There, the government initiated removal proceedings against Silva, a noncitizen who was a lawful permanent resident, after he was convicted of two criminal offenses in Minnesota.  *Id.* at 939.  An IJ ordered Silva removed from the United States, and he filed an appeal of that decision with the BIA, which automatically stayed the execution of the removal order while the appeal was pending. *Id.* (citing 8 C.F.R. § 1003.6(a)).  Despite the stay, the government removed Silva, but upon realizing its mistake, the government returned him to the United States two months later.  *Id.*  An IJ subsequently granted Silva's application for cancellation of removal.  *Id.*  Silva sued the government "to seek compensation for harm allegedly arising from [his] unlawful removal," raising claims under the Federal Tort Claims Act and the Fourth and Fifth Amendments.  *Id.*  The government moved to dismiss Silva's

complaint, arguing that the district court lacked jurisdiction to hear his claims under section 1252(g). *Id.* The district court granted the government's motion and dismissed Silva's claims. *Id.*

On appeal, Silva argued that the Supreme Court's holding in *AADC* requires courts to "narrow the scope of § 1252(g) to discretionary decisions" by the government to execute orders of removal. *Id.* at 940. Silva therefore asserted that section 1252(g) did not apply to his claims because the government "had no discretion to ignore the stay of removal while [his] administrative appeal was pending." *Id.*

The Eighth Circuit rejected Silva's argument, explaining that section 1252(g) "makes no distinction between discretionary and nondiscretionary decisions." *Id.* The court reasoned that the Supreme Court's "reference to discretionary decisions [in *AADC*] did not say that § 1252(g) applies *only* to discretionary decisions," noting that the statute's "plain language . . . includes no such limitation." *Id.* at 941. The court held that a "claim that is 'connected directly and immediately' to a decision to execute a removal order arises from that decision" and affirmed the district court's holding that section 1252(g) precluded judicial review of Silva's claims. *Id.* at 940 (quoting *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 943 (5th Cir. 1999)). Consequently, the district court lacked jurisdiction to hear Silva's claims even though "the execution of [his] removal order happened to be in violation of a stay." *Id.*

Acknowledging that "purely legal question[s]" were distinguished from "discretionary decision[s] or action[s]" in an earlier case, the Eighth Circuit "carved out an exception to § 1252(g) for a habeas claim raising a pure question of law, in part due to

12

concerns that a contrary rule would give rise to substantial constitutional questions." *Id.* at 941 (citing *Jama v. Immigr. & Naturalization Servs.*, 329 F.3d 630, 633 (8th Cir. 2003), *aff'd*, 543 U.S. 335 (2005)). But the court explained that while Silva's claims did not "involve a discretionary decision" by the government to execute his order of removal, it also did not "present a habeas claim that raise[d] a purely legal question of statutory construction." *Id.* The Eighth Circuit ultimately concluded that Silva's claims "ar[o]se from a decision to execute a removal order, and *Jama*'s rationale [did] not warrant excepting [his] claims from the limitation on the district court's jurisdiction." *Id. Silva* controls here.

## II.    Section 1252(g) Deprives the Court of Jurisdiction To Hear Mendoza Mendez's Claims

Mendoza Mendez does not dispute that he is subject to a valid, final order of removal. *See* ECF No. 14 at 2 ("[Mendoza Mendez] raises no issue with the validity of the removal order itself."). As such, Mendoza Mendez frames his claims not as a challenge to the decision to execute that order of removal but, rather, as a challenge to the Government's interpretation of the meaning of "deferred action." *Id.* Mendoza Mendez claims that the BFD notice he received in December 2024 was a grant of deferred action, which means that "he can be neither detained nor removed" unless that grant of deferred action is "terminated or revoked." ECF No. 14 at 2; *see* ECF No. 1 ¶¶ 55–70. Given Mendoza Mendez's framing of his challenge, he contends that section 1252(g) does not bar this Court's exercise of subject-matter jurisdiction over his claims or its authority to order his immediate release from detention. *See* ECF No. 14 at 1–9; ECF No. 1 at 16–17.

The Government contends that Mendoza Mendez's claims "arise[] from the decision to execute his removal order," which means they "fall[] squarely within the plain text of § 1252(g)'s jurisdictional bar."  ECF No. 12 at 11.  "Even if the Court had jurisdiction," the Government argues, Mendoza Mendez's "theory is unsupported by the facts or the law and must fail on the merits."  *Id.* at 15.  The Government asserts that Mendoza Mendez's claims rest on "two false premises": (1) that the BFD notice he received conferred deferred action; and (2) that deferred action "renders him unremovable."  *Id.*

Although Mendoza Mendez frames his claims as a challenge to the Government's interpretation of "deferred action" and its application of the statutes and regulations governing U-1 nonimmigrant status, *see* ECF No. 14 at 2–3, the arguments he raises and the relief he seeks suggest that he is, in fact, challenging the Government's decision and action to execute his order of removal.  As such, and in light of *Silva*, the Court agrees with the Government that section 1252(g) deprives the Court of jurisdiction to hear Mendoza Mendez's claims and to grant the relief he requests.

Mendoza Mendez alleges that he has been wrongfully detained in violation of the Due Process Clause of the Fifth Amendment because he purportedly has been granted deferred action and asks the Court to order his immediate release.  ECF No. 1 at 16–17.  But his detention is necessary for the Government to effectuate his order of removal.  *Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of [the] deportation procedure.").  In other words, it would be impossible for the government to execute a noncitizen's final order of removal and remove him from the United States without first taking him into custody.  *See id.*; *see also Wong Wing v. United States*, 163

14

U.S. 228, 235 (1896) ("Proceedings to exclude or expel would be vain if those accused could not be held in custody pending the inquiry into their true character, and while arrangements were being made for their deportation.").

Mendoza Mendez attempts to sidestep the jurisdictional issue by claiming that he is not requesting review of the removal decision but instead is challenging the constitutionality of his detention. But while Mendoza Mendez ostensibly "does not seek a stay of his removal order," ECF No. 14 at 5, ordering his release from detention as he requests would serve the same end. At the end of the day, he is asking this Court to stay the execution of his final order of removal. Mendoza Mendez's claims are therefore "connected directly and immediately" to the Government's "decision or action" to execute his removal order. *Silva*, 866 F.3d at 940 (citation omitted). Under *Silva*, section 1252(g) clearly prohibits this Court from reviewing such claims.[5]

The Government cites several decisions from courts around the country, including from within this District, that found no subject-matter jurisdiction based on essentially the same facts as those presented here. ECF No. 12 at 12–13; *see, e.g.*, *Rodriguez-Sosa v. Whitaker*, No. 18-cv-3261 (PAM/KMM), 2018 WL 6727068, at *1–2 (D. Minn. Dec. 21, 2018) (finding the court lacked jurisdiction pursuant to section 1252(g) where the habeas petitioner sought relief on the grounds that (1) she had been granted "deferred action" because of her status on the U-Visa waitlist and (2) DHS's change in policy was "arbitrary

---

[5]    Section 1252(a) separately provides that "the sole and exclusive means for judicial review of an order of removal," including "habeas corpus review," is by "a petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(5).

and capricious"); *Velasco Gomez v. Sessions*, No. C25-0522 JLR-BAT, 2025 WL 1726465, at *4 (W.D. Wash. June 20, 2025) (finding the court lacked jurisdiction pursuant to section 1252(g) where the petitioner "challenge[d] ICE's decision to detain him and execute his final order of removal despite USCIS's grant of deferred action pending the adjudication of his U-visa application"); *Lara-Saavedra v. Sessions*, No. 18-cv-2989 (MJD/LIB), 2019 WL 572656, at *1–2 (D. Minn. Feb. 12, 2019) (finding the court lacked jurisdiction to entertain habeas petition or to stay the petitioner's removal pursuant to section 1252(g), even though the petitioner had a pending U-visa application).  The Court finds those decisions persuasive.

Mendoza Mendez's attempts to distinguish these cases are unavailing.  He asserts that *Rodriguez-Sosa* and *Velasco Gomez* are inapposite largely by attacking a Central District of California case upon which those decisions relied, *Balogun v. Sessions*, 330 F. Supp. 3d 1211 (C.D. Cal. 2018).  *See* ECF No. 14 at 4–6.  Mendoza Mendez contends that the facts in this case are distinguishable from *Balogun* because the petitioner there expressly sought a stay of removal to await a final adjudication on his pending U-visa application.  *Id.* at 5 (citing *Balogun*, 330 F. Supp. 3d at 1212).  But as already discussed, even though Mendoza Mendez disclaims that he is seeking a stay of removal, the relief he requests would have the same effect.  *See* ECF No. 1 at 17 (requesting that the Court "[i]ssue a Writ of Habeas Corpus ordering Respondents to release [him] immediately"); ECF No. 14 at 2 (arguing that USCIS's purported grant of deferred action means that "he can be neither detained *nor removed*" (emphasis added)).

Mendoza Mendez's efforts to distinguish *Lara-Saavedra* fare no better. He observes that the petitioner in that case "did not challenge 'the Attorney General's interpretation of a statute or other legal question' but rather the execution of the [petitioner's] removal order." ECF No. 14 at 4 (quoting *Lara-Saavedra*, 2019 WL 572656, at *2). Unlike in *Lara-Saavedra*, Mendoza Mendez claims his "legal, nondiscretionary question" is premised on the Government's misinterpretation of the meaning of "deferred action," which triggers the exception to section 1252(g) acknowledged in *Silva* and brings his claims within the Court's jurisdictional purview. *See id.*; *Silva*, 866 F.3d at 941 (citing *Jama*, 329 F.3d at 632–33). But as already explained, the relief Mendoza Mendez requests here—immediate release from detention—would, in effect, operate as a stay of removal. Mendoza Mendez cannot, through selective framing, evade the conclusion that the relief he requests is the same as the relief more explicitly sought in *Lara-Saavedra*. Notwithstanding Mendoza Mendez's framing, his claims "arise from a decision to execute a removal order, and *Jama*'s rationale does not warrant excepting [his] claims from the limitation on the district court's jurisdiction." *Id.*

Furthermore, Mendoza Mendez's argument invokes the distinction between discretionary and nondiscretionary decisions to execute orders of removal. In essence, he asserts that the BFD notice he received in December 2024 was a grant of deferred action, which renders any efforts to execute his order of removal beyond the Government's discretion. *See* ECF No. 14 at 2, 8–9. The Court need not—indeed, given the holding here, it may not—opine as to whether Mendoza Mendez is correct that he was, in fact, granted deferred action, or whether such a grant would have the effect Mendoza Mendez ascribes

17

to it.  *Silva* plainly instructs that whether the Government's decision or action to execute

his removal order is discretionary or nondiscretionary does not change the analysis under

section 1252(g).   866 F.3d at 940 ("The statute . . . makes no distinction between

discretionary and nondiscretionary decisions.").  *Silva* controls the analysis here, and it

dictates the result.

Mendoza Mendez identifies a recent decision in an ongoing Western District of

Washington case, *Sepulveda Ayala v. Bondi*, No. 2:25-cv-1063-JNW-TLF, 2025 WL

2084400 (W.D. Wash. July 24, 2025),[6] that reached a different conclusion on remarkably

similar facts and arguments.  There, as here, the petitioner is subject to a final order of

removal and has a pending U-visa application.  *Id.* at *1.  Unlike here, however, ICE

expressly granted the petitioner a stay of removal in November 2022 based on his pending

U-visa application, which expired in January 2025.  *Id.*  The petitioner renewed his request

for a stay, but ICE detained him and pursued his removal.  *Id.*  USCIS subsequently issued

the petitioner a BFD notice, and ICE appears to have understood that to be a grant of

---

[6]      *Sepulveda Ayala* was entered after Mendoza Mendez submitted his briefing, and he
raised it to the Court's attention by filing a motion for leave to file a notice of supplemental
authority.  ECF No. 16.  The Government, for their part, also filed a notice of supplemental
authority to raise a different case to the Court's attention.  ECF No. 15.  The parties indicate
in their filings that they informed each other of these supplemental authorities before filing
and agree that the Court should consider them.  *See* ECF No. 15 at 1; ECF No. 16 at 2.  The
Court acknowledges receipt of those supplemental authorities and the discussion of them
at the hearing and has taken them into consideration.  For clarity of the record, and to the
extent a ruling is required on Mendoza Mendez's motion, that motion (ECF No. 16) is
granted.

deferred action.[7]  *See id.*  ICE then denied the petitioner's renewed request for a stay, explaining that because USCIS had granted him deferred action, "it is unnecessary and in fact, redundant" for ICE to grant a stay of removal.  *Id.* at *1–2.  Despite that acknowledgement, ICE continued to pursue the petitioner's removal, and the petitioner filed a habeas petition "challenging his detention while he has deferred action status."  *Id.* at *2.  The court reasoned that because the petitioner had been granted deferred action, and because ICE communicated to the petitioner that the grant of deferred action operates as a stay of his removal, the decision to execute the petitioner's removal order is beyond ICE's discretion.  *Id.* at *3–4.  As a result, the court held that section 1252(g) does not preclude judicial review of the petitioner's claims.  *Id.* at *5.

Mendoza Mendez's reliance on *Sepulveda Ayala* carries no weight.  First and foremost, the court there relied on Ninth and Sixth Circuit law, which construes section 1252(g) more narrowly than the Eighth Circuit.  *See id.* at *3–4; *see also Arce v. United States*, 899 F.3d 796, 801 (9th Cir. 2018) ("Where the Attorney General totally lacks the discretion to effectuate a removal order, § 1252(g) is simply not implicated."); *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 863–64 (6th Cir. 2022) (holding that section 1252(g) "[did] not preclude [the petitioner's] claims because her removal order was not

---

[7]    To be clear, the Government disputes that the BFD notice USCIS issued to Mendoza Mendez in December 2024 was a grant of deferred action.  ECF No. 12 at 16–17.  As discussed above, the Court takes no position on this issue.

executable").[8]  But Eighth Circuit law—*Silva*, to be specific—controls the analysis here, and *Silva* "makes no distinction between discretionary and nondiscretionary decisions" in the application of section 1252(g).  866 F.3d at 940.  Crucially, the Eighth Circuit held in *Silva* that section 1252(g) barred judicial review of the noncitizen's claims even while acknowledging that "the execution of [his] removal order *happened to be in violation of a stay*." *Id.* (emphasis added).  Therefore, the holdings in *Arce* and *Enriquez-Perdomo*—and by extension, *Sepulveda Ayala*—do not apply here.[9]

Second, the facts presented in this case are meaningfully distinguishable from the facts in *Sepulveda Ayala*.  Here, there is no indication that Mendoza Mendez was ever granted a stay of removal, nor is there any evidence that USCIS or ICE ever expressly communicated to Mendoza Mendez that his removal was stayed.  Quite the opposite: Mendoza Mendez requested a stay of his removal from ICE in November 2024, which ICE denied without explanation.  ECF No. 1 ¶ 45; *see* ECF No. 1-5.  By contrast, in *Sepulveda Ayala*, ICE granted the petitioner's first request for a stay of removal, and when ICE denied his renewed request for a stay, the agency explained that USCIS had granted him deferred

---

[8]    For clarity, the court in *Sepulveda Ayala* appears to have inadvertently cited *Enriquez-Perdomo* as a Second Circuit case, but *Sepulveda Ayala*'s discussion of *Enriquez-Perdomo* is otherwise accurate.  *See Sepulveda Ayala*, 2025 WL 2084400, at *4.

[9]    Further underscoring this point, the Ninth Circuit in *Arce* "acknowledge[d] that the Eighth Circuit . . . reached a contrary result" as it pertains to the scope of section 1252(g) and its application to nondiscretionary decisions to execute orders of removal.  899 F.3d at 801.  Likewise, the Sixth Circuit recognized that the Eighth Circuit "found no jurisdiction in similar circumstances" as those presented in *Enriquez-Perdomo* and that the Sixth Circuit's "interpretation of § 1252(g)'s text does not depend on the premise . . . that the provision precludes only claims arising from discretionary decisions and actions," which was "rejected in *Silva*." *Enriquez-Perdomo*, 54 F.4th at 866–67.

action and expressly stated that "it is unnecessary and in fact, redundant" for ICE to grant a stay of removal. 2025 WL 2084400, at *2. That fact was critical to the holding in *Sepulveda Ayala* that ICE's decision to execute the petitioner's order of removal was beyond its discretion and, consequently, that section 1252(g) did not bar judicial review. *See id.* at *3–4. Therefore, even under *Sepulveda Ayala*'s analysis, the decision to execute Mendoza Mendez's order of removal would remain within the Government's discretion and unreviewable by this Court.[10]

## CONCLUSION

No matter how Mendoza Mendez frames it, his challenge is to the Secretary of Homeland Security's exercise of her discretion to execute his removal order, which this Court lacks jurisdiction to review. *Rauda v. Jennings*, 55 F.4th 773, 778 (9th Cir. 2022); *see also Silva*, 866 F.3d at 940. Because section 1252(g) deprives the Court of jurisdiction, the Court may not reach the merits of Mendoza Mendez's claims. *See Brownback*, 592 U.S. at 218. Accordingly, the Court denies Mendoza Mendez's motion for a preliminary

---

[10]    The Court also observes that *Sepulveda Ayala* reached a different conclusion than a similar, recent Western District of Washington case cited by the Government and briefly discussed above: *Velasco Gomez*. There, as in *Sepulveda Ayala*, ICE expressly granted the petitioner deferred action, and the petitioner requested a stay of removal from ICE. *Velasco Gomez*, 2025 WL 1726465, at *3. ICE communicated to the petitioner that "granting an administrative stay of removal [was] not appropriate at [that] time" because the petitioner was "not currently subject to imminent removal from the United States[.]" *Id.* (alterations in original) (citation omitted). ICE later withdrew that determination, *see id.*, and the petitioner "challenge[d] ICE's decision to detain him and execute his final order of removal despite USCIS's grant of deferred action pending the adjudication of his U-visa application," *id.* at *4. The court "conclude[d] that § 1252(g)'s jurisdictional bar applies to [the petitioner's] challenge to his detention and removal, and as a result, the court lack[ed] jurisdiction to consider [his] habeas petition." *Id.*

injunction, lifts the previously entered TRO, and dismisses his petition without prejudice for lack of jurisdiction.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this matter,

**IT IS HEREBY ORDERED** that:

1.     Mendoza Mendez's Motion for a Preliminary Injunction (ECF No. 2) is **DENIED**;

2.     The Temporary Restraining Order entered on July 15, 2025 (ECF No. 10), and extended on July 29, 2025 (ECF No. 23), is **LIFTED**, effective immediately; and

3.     Mendoza Mendez's Petition for a Writ of Habeas Corpus (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 1, 2025                    *s/Laura M. Provinzino*
                                                              Laura M. Provinzino
                                                              United States District Judge